■ ALUMILINE CORPORATION, Appellant, v JOSEPH CHARLA IRON WORKS, INC., Respondent.—Judgment, Supreme Court, New York County, entered September 19, 1977, in favor of defendant, on its counterclaims, in the sum of $19,105.80, affirmed, without costs or disbursements. Although the president of defendant corporation was suspicious of an invoice received on or about June 6, 1975, which, it is now contended, was a dummy invoice to cover up an overpayment of $5,000 by defendant on the North Shore Towers project, it is still not clear, even after trial, when and how the subterfuge was discovered. Plaintiff's objection to defendant's motion to allow the interposition of a counterclaim for the recovery of this overpayment was limited to the fact that it related to a construction project other than the one on which plaintiff had brought suit, that the action had been on the Trial Calendar for 18 months, and that plaintiff had obtained a general release from defendant for the North Shore Towers project. Thus, no clear issue was posed as to the date of discovery of the overcharge, and Special Term assumed that the unavailability of the "shop tickets and delivery slips" was the reason for the delay in asserting this particular counterclaim. Hence, we find no abuse of discretion in allowing amendment of the answer to assert this counterclaim. As for the other ground cited by the dissent as a

basis for reversal, plaintiff moved, after both sides had rested, to dismiss the counterclaim for the $5,000 overcharge, asserting that the release constituted a complete defense. Trial Term properly denied the motion since plaintiff, in its reply to the counterclaims, failed to assert the affirmative defense of general release, as it was required to do. (CPLR 3018, subd [b].) The release, however, was in evidence for consideration by the jury, which knew that it was given in exchange for plaintiff's release of a mechanic's lien on the North Shore Towers project, and that it was executed before defendant's discovery of the $5,000 overpayment. The jury obviously considered all of the facts, and its verdict reflects discernment. Out of a total claim for $26,727.17 in counterclaims, the jury returned a verdict in defendant's favor for $15,600. We see no need for a retrial. Concur—Murphy, P. J., Lynch and Sullivan, JJ.; Lane and Markewich, JJ., dissent in a memorandum by Markewich, J., as follows: This action was commenced in May, 1974 to recover a balance said to be due plaintiff-appellant from defendant-respondent for materials supplied to defendant in connection with the latter's contract to perform certain work at Penn Station. The answer admitted deliveries but counterclaimed for alleged overcharges, and failure to account for amounts delivered, as well as to comply with specifications. By Christmas, 1975, discovery having been completed, plaintiff's statement of readiness was filed. After adjournments, trial was scheduled for September 5, 1977. Before that date, defendant moved to serve a supplemental answer, which would significantly increase the amount of the counterclaim for the Penn Station job. When that motion was made in the summer of 1977, one and one-half years after filing of the statement of readiness, it was incumbent upon the applicant for relief to give a reason for the delay, and also necessary for the court to furnish a reason for granting it. An appropriate reason was given for delay of the amendment in so far as Penn Station was concerned: defendant had only recently received documents necessary to spell out its damage. However, almost hidden away in these motion papers was an additional item of counterclaim for a job at North Shore Towers, having nothing whatever to do with Penn Station, alleging for the first time an overpayment of $5,000 in connection with North Shore Towers. Further, the excuse given for delay in moving in respect of the Penn Station claim had nothing to do with the North Shore Towers claim, as to the delay in asserting which no reason was given. Special Term's decision on the motion consisted of a completely undifferentiated grant of leave to serve a supplemental answer as prayed for, citing as the reason "that the facts and figures could not be obtained until the shop tickets and delivery slips were made available." There having been no reason given either in the application or in the decision for the relief afforded as to the North Shore Towers item, discretion was improvidently exercised by granting the motion in toto without excision of that item. Plaintiff did have a defense to the North Shore Towers counterclaim, i.e., that the item had been released. Accordingly, at the trial, by motion to conform pleading to proof, the release having been received in evidence, plaintiff attempted to vitiate the North Shore Towers counterclaim. The trial court refused to grant the motion, thus further confusing the situation and leaving the jury with a complete lack of understanding as to an important issue to be resolved. Although the court observed that everything was before the jury, it was not, for plaintiff was asserting the defense of release, never permitted to become an issue in the case. The jury's verdict was for defendant in an undifferentiated lump sum, rendering it completely impossible to determine what the jury actually did about the defense not permitted to be a defense. The error of improperly

permitting the North Shore Towers counterclaim to be added in the first place, which could have been corrected for all practical purposes by permitting the defense of release to be asserted as such, was thus compounded by the trial court's refusal to permit pleading to be conformed to proof. Both errors may be corrected at this juncture. The nonfinal order granting enlargement of the counterclaim, entered July 15, 1977, should be reviewed on this appeal (CPLR 5501, subd [a], par 1) and modified to the extent of striking the North Shore Towers counterclaim and severing it for trial separately, and then a new trial should be held as to the Penn Station job only, without confusion and with the issues clearly defined, as they were not at the trial. To say, as does the majority, that "the release * * * was in evidence for consideration by the jury, which knew" the details of its negotiation, is sheer speculation. It overlooks completely the paucity of the court's instruction on the subject in the charge. Therein only one mention was made of this counterclaim: that it was for $5,000, but otherwise lumping it in with the three others, and never even speaking of the release at all. The jury's confusion was evident in that, while five jurors voted for the undifferentiated verdict of $15,600 for defendant, the sixth reported his vote as $5,000 only.